**IMG-155**                                                           **NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-4487
_____

JIAN YONG YANG,

Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES
_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A89-253-397)
Immigration Judge:  Honorable Susan G. Roy

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
June 16, 2011
Before:  FUENTES, VANASKIE AND ROTH, <u>Circuit</u> <u>Judges</u>

(Opinion filed:  August 22, 2011)
_____

OPINION
_____

PER CURIAM

Jian Yong Yang seeks review of a final order of removal.  For the reasons that

follow, we will deny the petition for review.

I.

Petitioner Jian Yong Yang ("Yang") is a native and citizen of China.  He entered

the United States at an unknown place in July 2007, and conceded eligibility for removal. He applied for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT"), predicated on his fear of persecution based on his membership in an underground Christian church, which the Chinese government prohibits. At his immigration hearing, Yang testified that the church members worshipped in constantly-changing locations in order to avoid detection. Yang stated that on April 22, 2007, he was worshiping at a member's house. Armed police burst in and arrested Yang and his father; other members were able to escape. He was interrogated at a police station, beaten, and held in custody for nineteen days. To obtain his release, he signed a letter guaranteeing that he would not participate in church activities. He eventually resumed active church membership. Yang admitted that he was never contacted or harassed again by the police. He continues to practice his religion in the United States. He stated that he is afraid that, if returned to China, the government will persecute him. He also fears that he will be fined and jailed because he was illegally smuggled out of the country.

The Immigration Judge ("IJ") denied asylum relief, finding that Yang was not credible. The IJ took issue with Yang's story that an acquaintance of his was fined and jailed for having been smuggled out of the country. Yang mentioned this woman for the first time during his testimony; he did not include any information about her experience in his asylum application, and provided no corroboration. The IJ noted that it took Yang approximately six months to join a church after arriving in the United States, and rejected his explanation that his family members were too busy to help him. The IJ especially

2

took issue with Yang's failure to present testimony or a letter from his sister, who has status and who has allegedly seen him go to church. Finally, the IJ faulted Yang for failing to provide documentary evidence of his church membership or of his arrest, detention, or guarantee letter. The IJ concluded that Yang had not demonstrated past persecution or a well-founded fear of future persecution, and that Yang failed to meet the burden of proof for withholding of removal or CAT relief.

The Board of Immigration Appeals ("BIA") determined that the IJ's adverse credibility decision was not erroneous, and also found that Yang had not met his burden of proof under any of the applicable standards. Yang filed a timely petition for review.

II.

We have jurisdiction to review a final order of removal under 8 U.S.C. § 1252(a)(1). See Abdulai v. Ashcroft, 239 F.3d 542, 547 (3d Cir. 2001). Where, as here, the BIA adopts the findings of the IJ and discusses some of the bases for the IJ's opinion, this Court will review both opinions. See Xie v. Ashcroft, 359 F.3d 239, 242 (3d Cir. 2004). We review factual findings, including adverse credibility determinations, for substantial evidence, see Butt v. Gonzales, 429 F.3d 430, 433 (3d Cir. 2005), upholding them "unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B); see also Dia v. Ashcroft, 353 F.3d 228, 262 (3d Cir. 2003) (en banc). Because Yang filed his asylum application after the enactment of the REAL ID Act, the inconsistencies, inaccuracies, or falsehoods upon which the adverse credibility finding is based need not go to the heart of his claims. See 8 U.S.C. §

3

1158(b)(1)(B)(iii); <u>Lin v. Att'y Gen.</u>, 543 F.3d 114, 119 n.5 (3d Cir. 2008). Rather, the REAL ID Act permits credibility determinations to be based on observations of his demeanor, the plausibility of his story, and the consistency of his statements. 8 U.S.C. § 1158(b)(1)(B)(iii).

### III.

Yang claims that the adverse credibility finding is not supported by substantial evidence. The BIA upheld the IJ's finding based on Yang's failure to mention in his asylum application his acquaintance who had been fined, jailed, and beaten for having been illegally smuggled out of China, and for his failure to provide any testimony from his sister.[1] Yang explains that his knowledge of his acquaintance's experience was second-hand, that he could not contact her, and that the issue was not central to his case of persecution. The BIA's reliance on the discrepancy between his asylum application and his testimony regarding his acquaintance's story is reasonable, given that his application is based in part on his fear of future persecution for having illegally departed China.

The IJ's and BIA's reliance on Yang's failure to corroborate his claims with a letter or testimony from his sister goes more to the heart of his asylum claim, rather than his credibility. We have found that "an applicant for asylum must provide reliable evidence to corroborate testimony when it is reasonable [to do so] and there is no

---

[1] We agree with the BIA that it is not implausible that Yang would be unable to provide proof of his membership or even of the existence of his church in China,

4

satisfactory explanation for its absence." Sandie v. Att'y Gen., 562 F.3d 246, 252 (3d Cir. 2009). Accordingly, denial of relief may be predicated on a failure to corroborate when: "(1) the IJ identifies facts for which it is reasonable to expect the applicant to produce corroboration, (2) the applicant fails to corroborate, and (3) the applicant fails to adequately explain the failure." Chukwu v. Att'y Gen., 484 F.3d 185, 191-92 (3d Cir. 2007) (citing Abdulai, 239 F.3d at 554). In this case, the IJ followed the proper line of inquiry regarding Yang's failure to provide corroboration, although it appears the IJ and BIA conflated that failure with a lack of credibility.

In any event, the IJ and BIA found that even if Yang's testimony was to be believed, he had failed to meet his burden of proof for asylum. To establish eligibility for asylum, Yang must demonstrate either past persecution or a well-founded fear of future persecution on account of race, religion, nationality, membership in a particular social group, or political opinion. See Vente v. Gonzales, 415 F.3d 296, 300 (3d Cir. 2005). "[P]ersecution connotes extreme behavior, including 'threats to life, confinement, torture, and economic restrictions so severe that they constitute a threat to life or freedom.'" Ahmed v. Ashcroft, 341 F.3d 214, 217 (3d Cir. 2003). It does not include "isolated incidents that do not result in serious injury." Voci v. Gonzales, 409 F. 3d 607, 614-15 (3d Cir. 2005).

Yang argues that he suffered persecution when he was arrested, beaten, and detained for nineteen days for practicing his religion. By his own account, the beating

give its unauthorized and underground status.

lasted approximately one minute and he did not sustain serious injuries or require medical attention. The IJ and BIA determined that Yang's physical mistreatment, as described, and his nineteen-day detention did not rise to the level of persecution. We agree. See Chen v. Ashcroft, 381 F.3d 221, 223, 234-35 (3d Cir. 2004) (beating with sticks by Chinese officials did not constitute persecution where petitioner never required medical attention), and Kibinda v. Att'y Gen., 477 F.3d 113, 119-20 (3d Cir. 2007) (a single detention and beating requiring stitches did not rise to the level of persecution).

We also find that the evidence in the record supports the IJ's and BIA's conclusion that Yang failed to demonstrate a well-founded fear of future persecution on account of his religion. Yang continued to practice his religion in China for months after signing the guarantee letter and no harm came to him. Likewise, his father and friend who were also arrested with him continued to practice without any consequence. He testified that he has no indication that the police are looking for him or have any interest in him.

Finally, substantial evidence supports the IJ's and BIA's determination that Yang failed to show a well-founded fear of persecution because he left China illegally. The BIA properly noted that prosecution for illegal departure does not qualify a person for asylum. There is insufficient evidence to show that persons repatriated to China after illegal departure face torture or persecution. See, e.g., Wang v. Ashcroft, 368 F.3d 347, 350 (3d Cir. 2004). Accordingly, Yang has not met his burden of proof for asylum.

As Yang has failed to meet the burden for asylum, he fails to meet the higher burden for withholding of removal under 8 U.S.C. § 1231(b)(3). See Lukwago v.

6

Ashcroft, 329 F.3d 157, 182 (3d Cir. 2003).  Likewise, the record does not support his

claim for CAT protection.  See id. at 182-83.  Accordingly, the BIA properly denied CAT

relief.

IV.

For the foregoing reasons, we will deny the petition for review.